IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**Fallya Petrakopoulou,**   )
                            )
    Plaintiff/Counterdefendant  )
                            )
  v.                        )   Case No. 08 C 4989
                            )
**DHR International, Inc.,** )
                            )
    Defendant/Counterclaimant.  )

### MEMORANDUM OPINION AND ORDER

Fallya Petrakopoulou has sued her former employer, DHR International, for breach of the parties' employment agreement (the "Employment Agreement")[1] DHR has brought a counterclaim, identical to its affirmative defense, alleging fraudulent inducement. Before me is plaintiff's motion to dismiss defendant's counterclaim under Fed. R. Civ. P. 12(b)(6) and to strike defendant's affirmative defense under Fed. R. Civ. P. 12(f). For the reasons stated below, I grant plaintiff's motion.

I.

Defendant is an executive search firm headquartered in Chicago with offices throughout the world. In late 2005, defendant began discussions with plaintiff to open an office for defendant's

---

[1] For ease of reference, I refer to the parties as "plaintiff" and "defendant," rather than "counterdefendant" and "counterclaimant," even though it is defendant's counterclaims that are at issue in the pending motion.

business in Paris, France. These discussions culminated in defendant's letter offer of employment dated May 24, 2007, which plaintiff countersigned on June 1, 2007.

According to the Employment Agreement (i.e., the executed letter offer), plaintiff's employment would begin on or before September 1, 2007,[2] and she would have the title, among others, of Managing Director France.[3] The Employment Agreement is silent as to the nature of plaintiff's responsibilities, but the parties agree that she was hired to open an office to conduct defendant's business in Paris, France.

The Employment Agreement contains three sections, captioned "Compensation," "Notice Period," and "Agreement." The Compensation section sets forth a compensation structure that includes a base salary, a one-time signing bonus, and additional bonuses calculated as percentages of "collected search fees." The Agreement also sets forth a table outlining plaintiff's entitlement to "compensation on collected revenue."

The Notice Period section states, in its entirety: "Should [plaintiff] or [defendant] terminate [plaintiff]'s employment

---

[2] The parties agree that she actually started work on October 1, 2007.

[3] The Employment Agreement stated that she was also "Executive Vice President and Global Leader of the Pharmaceuticals Practice" and "a member of the Executive Committee." Plaintiff was also referred to as "Consultant" throughout the Agreement.

agreement, the notice period shall be 3 months or another mutually agreed timeframe."

The Agreement section states:

This Agreement constitutes the entire agreement between the parties hereto and contains all of the covenants, representations, and warranties of the respective parties, There are no oral representations or warranties between the parties of any kind. This Agreement may not be amended in any respect except by written instrument signed by the parties. Any oral amendments or modification will be of no force or effect and will be void."

On March 24, 2008, defendant advised plaintiff that her compensation would change to a "commission-only" arrangement. On March 27, 2008, plaintiff refused to agree to this change. Defendant treated plaintiff's response as an immediately effective resignation from defendant's employ. Plaintiff claims (and defendant does not dispute) that she has not had access to defendant's computer systems or received payment of any kind since that date.

## II.

A motion to dismiss tests the sufficiency of claims, not their merit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Because plaintiff is the movant, I must accept all well-pleaded allegations in the counterclaims as true and draw all reasonable inferences in defendant's favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Dismissal is warranted only if the factual material in the counterclaims fails

plausibly to suggest that defendant is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

As a general rule, I may consider only the pleadings at the motion to dismiss stage. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). Because the Employment Agreement is attached to the counterclaims and is referenced in and central to them, however, that agreement is considered to be part of the counterclaims. *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." *Id.*, *citing* Fed. R. Civ. P. 10(c)). Moreover, to the extent the terms of the Employment Agreement conflict with the allegations in the counterclaims, the Employment Agreement prevails. *Centers,* at 993; *Rosenblum*, at 661 ("The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." (*quoting* 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1327 at 766 (1990))). Thus, defendant may plead itself out of court by attaching documents that show it is not entitled to judgment. *See Centers*, at 933.

The standard articulated above applies equally to plaintiff's motion to strike. *Rizzo v. Ball Horticultural Co.*, No. 04 C. 6723, 2005 WL 1126538, at *3 (N.D. Ill., April 20, 2005) (*citing Heller*

4

*Fin., Inc., v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) (Manning, J.).

Fraud in the inducement is a form of common-law fraud. *Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 653 N.E.2d 968, 972 (Ill.App.Ct. 1995). The elements of common-law fraud in Illinois are: 1) a false statement of material fact; 2) knowledge or belief by the maker that the statement was false; 3) an intent to induce reliance on the statement; 4) reasonable reliance upon the truth of the statement; and 5) damages resulting from that reliance. *Id.*

III.

Defendant claims that plaintiff fraudulently induced it to enter into the Employment Agreement, citing three representations plaintiff allegedly made during the parties' negotiations: 1) that she was personally responsible for consistently generating between $1 million and $1.5 million in annual revenue based on her existing client base; 2) that she had the ability to transition her existing client base to defendant; and 3) that she had the ability to consistently generate at least $1 million in annual revenue for defendant. Defendant asserts that these representation were untrue, that plaintiff knew or should have known they were untrue, and that the representations were made to induce defendant to enter into the Employment Agreement.

Plaintiff raises three arguments for dismissing defendant's counterclaim. She first contends that the language in the Agreement section of the Employment Agreement that states, "there are no oral representations or warranties between the parties of any kind" precludes defendant's fraudulent inducement counterclaim as a matter of law. Second, she asserts that even if the counterclaim is not barred, defendant failed to plead the alleged fraud with the particularity required under Fed. R. Civ. P. 9(b). Finally, plaintiff argues that two of the three assertions defendant identifies are not actionable as fraud because they are merely opinions about future conduct.

In support of her first argument, plaintiff relies on *Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000) and its progeny. Plaintiff argues that the statement, "there are no oral representations or warranties between the parties of any kind" vitiates defendant's claim of reasonable reliance. Plaintiff likens this language to the contractual terms at issue in *Rissman*, which the Seventh Circuit held barred a later fraud claim. The contract at issue in *Rissman* stated:

> The parties further declare that they have not relied upon any representation of any party hereby released or of their attorneys, agents, or other representatives concerning the nature or extent of their respective injuries or damages.

*Rissman*, at 383.[4] The court explained that if a claimant who, by contract, expressly disclaimed reliance on any prior oral statement were later entitled to have a jury determine the extent of his (previously disclaimed) reliance, the contractual no-reliance provision would be nullified. *Rissman*, at 385.

Defendant first responds that *Rissman* is inapposite because it is a federal securities case. Defendant then advances copious authority for the proposition that integration clauses do not preclude claims for fraudulent inducement. Indeed, that is the general rule in Illinois and elsewhere. *See Vigortone AG Products, Inc., v. PM AG Products*, 316 F.3d 641, 644 (7th Cir. 2002) (explaining that although the Illinois Supreme Court has yet to address the question squarely, Illinois is presumed to follow the majority rule that "an integration clause does not bar a fraud claim.")

This does not resolve the matter, however, because plaintiff argues that that language in the Agreement section is akin to an

---

[4]The *Rissman* court also relied on additional disclaimers, which it cited as follows: "(a) no promise or inducement for this Agreement has been made to him except as set forth herein; (b) this Agreement is executed by [Arnold] freely and voluntarily, and without reliance upon any statement or representation by Purchaser, the Company, any of the Affiliates or O.R. Rissman or any of their attorneys or agents except as set forth herein; (c) he has read and fully understands this Agreement and the meaning of its provisions; (d) he is legally competent to enter into this Agreement and to accept full responsibility therefor; and (e) he has been advised to consult with counsel before entering into this Agreement and has had the opportunity to do so." *Id*.

express statement of non-reliance and thus must be analyzed as a no-reliance clause, rather than as an integration clause. *See Deluxe Media Services, LLC v. Direct Disc Network*, Inc., No. 06 C 1666, 2007 WL 707544 at *6-*7 (N.D. Ill. March 2, 2007) (Moran, S.J.) (explaining that "merger" or "integration" clauses do not preclude fraud claims, but "no-reliance" clauses may). Plaintiff argues that the provision in the Agreement section negating the very existence of prior representations effects a clearer disclaimer than a clause that merely states, as integration clauses typically do, that the written instrument represents the entirety of the parties' agreement. While this argument is not without appeal, an equally plausible argument is that the blanket disclaimer at issue is a less clear disavowal of rights than the detailed no-reliance provisions at issue in *Rissman*. Ultimately, however, I need not resolve this particular issue because even assuming the clause at issue is a no-reliance clause, defendant's fraud claim is not automatically precluded. *See Rissman*, 213 F.3d at 389 (Rovner, J., *concurring*).

In her concurring opinion in *Rissman*, Judge Rovner agreed with the majority that the no-reliance clause before the court foreclosed that claimant's fraud claim. She wrote separately, however, "to avoid the inevitable quotes in future briefs characterizing our holding as an automatic rule precluding any damages for fraud based on prior oral statments when a non-reliance

clause is included in a written agreement." *Id*. She explained that both the *Rissman* majority and the principal cases on which it relied (*Jackvony v. RIHT Financial Corp.*, 873 F.2d 411 (1st Cir. 1989) (Breyer, J.), and *One-O-One Enterprises, Inc. v. Caruso*, 848 F.2d 1283 (D.C.Cir. 1988) (R.B. Ginsburg, J.)), had considered the surrounding circumstances in deciding whether reliance on a prior oral statement was reasonable. Of these cases, only *One-O-One* affirmed a dismissal under Rule 12(b)(6) (the *Jackvony* claimant appealed a directed verdict, and the *Rissman* claimant sought to overturn a grant of summary judgment). More to the point, none of the cases upheld dismissal based on as few facts as are presently before me on such issues as the parties' previous relationship; their negotiations leading up to the contract (including whether the parties were represented by counsel); and the parties' access to relevant information (i.e., the opportunity to detect the alleged fraud).

While defendant's conclusory assertion that securities cases are irrelevant is, without more, unpersuasive, it is true that the agreements at issue in those cases tend to be substantially more comprehensive and detailed than the two-page Employment Agreement. Whereas stock purchase transactions are typically papered with written disclosures and representations (some of which are mandated by federal securities laws) about the rights and responsibilities of the respective parties, the Agreement at issue is silent even as

9

to the nature of the fundamental object of the contract: the work plaintiff is hired to perform. It would defy common sense to interpret the "no oral representations" clause literally, for presumably the parties had some understanding of what defendant was hiring plaintiff to do, despite the fact that her duties are nowhere reflected in the Agreement.

In sum, while certain of the very limited facts before me do tend to favor plaintiff (for example, that defendant itself drafted the Employment Agreement, that defendant is, presumably, at least as sophisticated a negotiator as plaintiff, and that the contract contains provisions that protect defendant in the event of plaintiff's underperformance), I cannot, at this stage, conclude that defendant's alleged reliance on plaintiff's statements was unreasonable as a matter of law based on the language of the Agreement section alone.

Defendant is not out of the woods, however. First, plaintiff is correct that the purpose of Rule 9(b)'s heightened pleading standard for fraud is to protect those accused from unwarranted harm to their reputations. *U.S. ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007) (*citing Kennedy v. Venrock Assoc.*, 348 F.3d 584, 594 (7th Cir. 2003); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). In *Ackerman*, the Seventh Circuit explained:

> The purpose of requiring that fraud be pleaded with particularity is not, as it might seem and the cases still

> sometimes say [citations] to give the defendant in such a case enough information to prepare his defense. A charge of fraud is no more opaque than any other charge. The defendant can get all the information he needs to meet it by filing a contention interragatory [citations]. The purpose (the defensible purpose, anyway) of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint.

*Id.* (Internal citations omitted). Here, there is nothing in defendant's counterclaims to suggest that its allegations are based on any investigation at all. Indeed, from the facts presented, it appears that defendant merely surmised that plaintiff's assertions about her past performance must have been untruthful based on her performance as defendant's employee. Such speculation falls short even of the ordinary notice pleading standard, *see Bell Atlantic v. Twombley*, 127 S.Ct. 1955, 1965 (2007)(complaint must allege sufficient factual material to "raise a right to relief above the speculative level"), and it is insufficient to state a claim under Rule 9(b). I also find that defendant's allegations are insufficiently precise as to the identities of the individuals other than Geoff Hoffman who allegedly heard the statements.

That takes care of the first alleged misrepresentation. As to the others, additional considerations are at play. Defendant claims that plaintiff not only misrepresented her past successes, she also misrepresented her ability "to transition her existing client base" to defendant, and "to generate at least $1 million in annual revenue" as defendant's employee. Plaintiff asserts that

these alleged statements are inactionable as mere opinions of future performance.

Taking defendant's second claim first, the statement imputed to plaintiff falls within the realm of expressions of opinion and statements regarding future events that are not actionable as fraud in Illinois. *Prime Leasing, Inc. V. Kendig*, 332 Ill.App.3d 300, N.E.2d 84, 92 (Ill.App.Ct. 2002). Defendant acknowledges the general rule that such statements are inactionable and offers no convincing basis for departing from it. Neither of the cases defendant cites--*Williams-Ellis v. Mario Tricoci Hair Salons and Day Spas*, No. 05 C 5030, 2007 WL 3232490 (N.D. Ill. Nov. 1, 2007) (misrepresentation about the price of a haircut) and *Markarian v. Garoogian*, 767 F.Supp. 173 (N.D. Ill. 1991)(objectively implausible representations about a scientific invention)--addresses alleged misrepresentations about future earning potential, which are inherently speculative. In this respect, defendant's claims are indeed comparable to those raised in securities cases, in which projections relating to future performance are routinely held nonactionable. *See Donovan v. ABC-NACO*, Inc., No. 02 C 1951, 2002 WL 1553259, at *7 (N.D. Ill., 2002)(Kocoras, J.)(collecting cases).

As to the claim that plaintiff stated she had the "ability" to transition her existing client base, defendant's claim is subject to multiple interpretations, and it is entirely unclear from the allegations what plaintiff is alleged to have actually said. If

defendant's claim is that plaintiff made the very assertion set forth in the counterclaim, i.e., "I have the ability to transition my existing client base to DHR," the inherent vagueness of the statement dooms any claim of reasonable reliance.

At least as likely, however, is that the misrepresentation alleged in the counterclaim is defendant's own characterization of the statement or statements plaintiff allegedly made. But whether defendant has an actionable claim depends not on defendant's interpretation of plaintiff's words (at least, not without some factual context to show that that interpretation was reasonable), but on the actual statements made. For example, if plaintiff stated, "my clients are loyal, and they will follow me to my new employer," my analysis would be substantially similar to the one above relating to projections about future earning potential. If, on the other hand, defendant claims that plaintiff stated, "my clients have pledged to follow me to a new employer," such a statement would be objectively verifiable and could support a claim of fraud.

The point is that defendant's claim is subject to a wide variety of interpretations, and without a clear allegation of what plaintiff is alleged to have said (along with the other necessary details of who, where, when, and how), defendants have not adequately pled their claim.

IV.

For the foregoing reasons, plaintiff's motion to dismiss defendant's counterclaims and to strike defendant's affirmative defense is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:   December 17, 2008