# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Fallya Petrakopoulou,** | ) |
| Plaintiff/Counterdefendant | ) ) ) |
| v. | ) No. 08 C 4989 ) |
| **DHR International, Inc.,** | ) ) |
| Defendant/Counterclaimant. | ) |

## MEMORANDUM OPINION AND ORDER

In this employment dispute, defendant DHR International, an executive search firm, counters the breach of contract claim brought by plaintiff Fallya Petrakopoulou, DHR's former employee, with the affirmative defense (and identical counterclaim) that the employment contract plaintiff asserts is void because she fraudulently induced defendant to execute it. On December 17, 2008, I granted plaintiff's motion to dismiss this affirmative defense and counterclaim. *Petrakopoulou v. DHR Int'l., Inc.* 590 F.Supp.2d 1013 (N.D.Ill. 2008) ("*Petrakopoulou I*"). Defendant has since amended its claim,[1] and plaintiff again moves to dismiss. For the reasons discussed below, I deny plaintiff's motion.

---

[1]For ease of reference, I refer to both the affirmative defense and the counterclaim as defendant's "claim," since, as noted in my previous opinion, the standard is the same for both on a motion to dismiss. *See Rizzo v. Ball Horticultural Co.*, No. 04 C. 6723, 2005 WL 1126538, at *3 (N.D. Ill., April 20, 2005) (*citing Heller Fin., Inc., v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989) (Manning, J.).

I.

As set forth in greater detail in *Petrakopoulou I*, defendant is an executive search firm headquartered in Chicago with offices throughout the world. On June 1, 2007, after more than a year of negotiations, the parties entered into an employment agreement (the contract at issue here) pursuant to which plaintiff would open an office to conduct defendant's business in Paris, France. Approximately six months into plaintiff's employment, defendant sought to change the terms of her contract. Plaintiff refused to accept the proposed changes. Defendant informed her that it deemed her refusal a constructive resignation and immediately terminated her, cutting off all access she previously had to defendant's various systems, and refusing to make compensation and other payments plaintiff asserts were owing to her. Plaintiff claims that these acts violate the terms of the parties' employment agreement.

Defendant counters that the parties' employment agreement is void because plaintiff fraudulently induced defendant to enter into the agreement. In its original claim, defendant cited three allegedly false representations plaintiff made during the parties' negotiations and claimed that it reasonably relied on these misrepresentations in agreeing to hire plaintiff on the terms set forth in the employment agreement. Defendant claimed that plaintiff represented: 1) that she was personally responsible for

2

consistently generating between $1 million and $1.5 million in annual revenue based on her existing client base; 2) that she had the ability to transition her existing client base to defendant; and 3) that she had the ability to consistently generate at least $1 million in annual revenue for defendant.

I dismissed defendant's claim on several grounds. First, I found that defendant failed to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) because nothing in defendant's allegations suggested that it had done any investigation to ascertain the truth or falsity of plaintiff's putative representations. As to the representation about plaintiff's past performance, I held that mere speculation that the statements were untrue was insufficient to support a fraud claim. *Petrakopoulou I*, at 1019, relying *inter alia* on *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999). Next, I found that the claim that plaintiff misrepresented her future earning potential was inactionable as within the "realm of expressions of opinion and statements regarding future events that are not actionable as fraud in Illinois." *Id*. (citing *Prime Leasing, Inc. V. Kendig*, 332 Ill.App.3d 300, 773 N.E.2d 84, 92 (Ill.App.Ct. 2002)). Finally, I held that the claim that plaintiff misrepresented her "ability" to transition her existing client base was "subject to a wide variety of interpretations, and without a clear allegation of what plaintiff is alleged to have said (along with the other necessary

details of who, where, when, and how)," defendant had not adequately pled its claim.

In its amended claim, defendant has slightly recharacterized plaintiff's misrepresentations and now asserts two categories of allegedly false statements: 1) misrepresentations relating to her past revenue generation; and 2) false statements regarding her client base. In the first category, defendant again claims that plaintiff represented that she was responsible for generating between $1 million and $1.5 million in annual revenue from her existing client base. In the amended allegations, defendant identifies three individuals, Joshua Christ, Nick Slee, and Geoff Hoffman, "and others," to whom plaintiff allegedly made this claim verbally between mid 2006 and May 2007.[2] Defendant then alleges that "in these same conversations, as well as in several e-mail communications beginning in or about May 2006," plaintiff represented that her annual salary at that time was between $300,000 and $400,000. Finally, defendant claims that plaintiff told Geoff Hoffman in or around May of 2006 that even in her least successful year, she still generated between $800,000 and $900,000 in revenue for her employer.

Defendant's allegations relating to the second category of misrepresentations include that plaintiff stated she had "ensured

---

[2]In its original counterclaim, defendant named one individual employee, "and others," and claimed that plaintiff had made this representation between late 2005 and June 2007.

4

the transfer of revenue from her existing client base to DHR."
Defendant fleshes out this allegation with the following details:
First, in a telephone conversation with Geoff Hoffman in or about
May 2006, plaintiff stated that many of her clients would "follow
her wherever she went," including to DHR. In particular, plaintiff
stated that one of her primary clients (which she identified by
name at the time),[3] had indicated that it had several positions it
wanted her to fill, and that those assignments would remain with
her if she left her then-current employer. According to defendant,
plaintiff "stressed the significance of this commitment" because
she consistently generated hundreds of thousands of dollars in
revenue annually from that particular client. In addition,
defendant claims that during the same time frame, plaintiff told
Nick Slee that she had already advised her clients of her intent to
join DHR, and that several of her clients--including two she
mentioned by name--had indicated that their business would continue
with plaintiff at her new firm. Defendant adds that within the
"search" industy, it is common for individuals in plaintiff's
position to "discuss a possible change of employment with
[productive] clients to obtain assurances that the client
relationships will indeed continue after the change."

---

[3]Defendant does not name the client in its pleading but offers to do so in camera or subject to a protective order.

Oddly, defendant does not allege that any of the clients plaintiff supposedly named did not, in fact, continue with plaintiff after her move, nor in fact does it specify the allegedly insufficient amount she generated in fees while in its employ.[4] Defendant does address both of these points in its supporting memorandum, however, arguing that defendant worked on only two search assignments in the first six months of her employment (and that they were not the assignments she claimed her clients had previously promised), and that she had generated less than $70,000 in fees.

Defendant rounds out its allegations with conclusory statements that plaintiff's representations were false; that she knew her representations to be false or was culpably ignorant of their falsity; that she intended to induce reliance on the false statements; and that defendant did, in fact, reasonably rely on her statements to its detriment.

II.

A motion to dismiss tests the sufficiency of claims, not their merit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). I must accept all well-pleaded allegations in defendant's claim as true and draw all reasonable inferences in defendant's

---

[4]Defendant should have alleged these facts in its affirmative defense and counterclaim, of course. I see no point in forcing defendant to replead the claim to correct this technical error, however. The thrust of defendant's allegations are clear.

6

favor. *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Dismissal is warranted only if the factual material in the claim fails plausibly to suggest that defendant is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007).

Fraud in the inducement is a form of common-law fraud. *Lagen v. Balcor Co.*, 274 Ill.App.3d 11, 653 N.E.2d 968, 972 (Ill.App.Ct. 1995). The elements of common-law fraud in Illinois are: 1) a false statement of material fact; 2) knowledge or belief by the maker that the statement was false; 3) an intent to induce reliance on the statement; 4) reasonable reliance upon the truth of the statement; and 5) damages resulting from that reliance. *Id.*

III.

In the second iteration of its claim, defendant has pleaded sufficient details about the "who, what, where, when, and how" of plaintiff's statements to satisfy Rule 9(b). The content of the representations has been identified with substantially more specificity than in the original claim. For instance, defendant now asserts that plaintiff identified particular clients who had pledged to "go with" her to DHR, and indeed said she had particular assignments lined up with those clients. While it is true that defendant continues to assert that plaintiff made these representations to unspecified "others," defendant also identifies three specific individuals to whom plaintiff allegedly made the

7

statements. Moreover, defendant is correct that it need not plead precise dates and times of the alleged misrepresentations, *see, e.g., ABC-NACO, Inc. v. DeRuyter*, No. 99 C 1969, 1999 WL 521171 (July 14, 1999) (Manning, J.) (precise dates and times "down to the nanosecond" not required); *Onesti v. Thomson McKinnon Securities, Inc.*, 619 F.Supp. 1262, 1265 (N.D. Ill. 1985) (approximate time frame sufficient), and defendant has narrowed the time frame in which it claims plaintiff made the statements to a reasonable period. Finally, defendant has stated that plaintiff's alleged misrepresentations were made "verbally" (though this could mean either in person or over the phone) and by e-mail. The who-what-where-when-how requirements have been minimally met.

A closer call is whether defendant has alleged a reasonable basis for believing plaintiff's statements were fraudulent. As I noted in *Petrakopoulou I*, the purpose of the heightened pleading standard of Rule 9(b) is to protect those accused of fraud from unwarranted harm to their reputations, *Petrakopoulou I*, 590 F.Supp.2d at 1018 (citing *U.S. ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007) (citing *Kennedy v. Venrock Assoc.*, 348 F.3d 584, 594 (7th Cir. 2003)); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)), and requires litigants to conduct "more than the usual investigation" before bringing claims of fraud. *Petrakopoulou I*, at 1019 (quoting *Ackerman*, 172 F.3d at 469). Indeed, Rule 9(b) is intended not only to inform those

8

alleged of fraud of the claims against them, but also "to eliminate the filing of a conclusory [fraud claim] as a pretext for using discovery to uncover wrongs." *A.I. Credit Corp. V. Hartford Computer Group, Inc.*, 847 F.Supp. 588, 597 (N.D. Ill. 1994)(citations omitted).

Defendant insists, quoting *Katz v. Household International, Inc.*, 36 F.3d 670, 675-76 (7th Cir. 1994), that it need not "plead facts showing that the alleged representations are indeed false." True enough, but defendant must, at a minimum, state the grounds for its suspicions. *Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 254 F.Supp.2d 1028, 1040 (N.D. Ill. 2003)(citing *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). Defendant does this, by inference, when it argues that "the falsity of Plaintiff's statements is a reasonable inference that can be drawn from Plaintiff's failure to generate the business or revenue as to which she had provided such specific assurances."[5] It is clear from this argument that it is the fact of plaintiff's poor performance that underlies defendant's belief in the falsity of her representations. Drawing all inferences in defendant's favor, as I must, I narrowly conclude that this is sufficient in the context of defendant's allegations.

I am mindful of the Seventh Circuit's admonishment in *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990), that allegations

---

[5]See note 4, *supra.*

9

of fraud must suggest more than merely "fraud by hindsight" (quoting *Denny v. Barber*, 576 F.2d 465, 470 (2nd Cir. 1978)). The *DiLeo* court explained:

> The story in this complaint is familiar in securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. "Must be" is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition. Because only a fraction of financial deteriorations reflect fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud.

*DiLeo*, 901 F.2d at 628 (citations omitted). In this case, defendant's asserted basis for alleging fraud walks the line between articulating a reasonable basis for its belief in the falsity of plaintiff's statements and alleging merely "fraud by hindsight," since countless factors other than fraud may indeed have resulted in plaintiff's failure to bring to DHR the business she anticipated. On the one hand, I hesitate to allow defendant to embark on a fishing expedition to uncover wrongdoing under the guise of discovery. On the other hand, however, the information defendant would need to substantiate its belief in the falsity of plaintiff's statements may, at this point, be unavailable to it through reasonable means short of discovery. *See Jepson, Inc. V. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (specificity requirements of Rule 9(b) may be relaxed when details are within

exclusive knowledge of accused). Of course, over the more-than-a-year long course of the parties' negotiations, defendant had ample opportunity to confirm the accuracy of plaintiff's representations (by requiring her to provide tax returns to verify her annual income, for example), or to hold plaintiff accountable by incorporating her representations into the terms of the parties' agreement (by making the "transfer" of her clients a condition of her employment, for example). These issues ultimately go to the reasonableness of defendant's reliance, however, not to whether defendant can be expected to uncover facts to substantiate its fraud claim at the pleading stage through reasonable, pre-litigation investigation. While defendant may have its work cut out for it on the reliance issue,[6] I do not find that it has failed to plead a sufficient basis for its belief in the falsity of plaintiff's statements.

IV.

For the foregoing reasons, plaintiff's motion to dismiss defendant's counterclaims and to strike defendant's affirmative defense is denied.

---

[6] I note that while in *Petrakopoulou I* I declined to hold, at the motion to dismiss stage, that the boilerplate integration or "no-reliance" clause of the employment agreement barred defendant's claim as a matter of law, I expect that this issue will be revisited on summary judgment, after the parties have had the opportunity to elucidate the details and context of their relationship and negotiations.

11

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 30, 2009