# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **FALLYA PETRAKOPOULOU,** ) | |
| ) | |
| Plaintiff/Counterdefendant ) | |
| ) | |
| v. ) | |
| ) | No. 08 C 4989 |
| **DHR INTERNATIONAL, INC.** ) | |
| ) | |
| Defendant/Counterclaimant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

In September 2008, Fallya Petrakopoulou ("Petrakopoulou") sued DHR International, Inc. ("DHR") under Illinois law for breach of their employment contract ("the contract," "the agreement"). Under the agreement, Petrakopoulou was to open an office and manage DHR's business in Paris, France. Petrakopoulou alleges that after roughly six months of employment, DHR sought to change the terms of the parties' agreement. She further alleges that when she refused to accept the changes, she was fired and denied compensation to which she was entitled.

DHR answered the complaint and asserted fraudulent inducement as both an affirmative defense and a counterclaim. Specifically, DHR claimed that the employment contract was void because DHR had entered into the agreement as a result of alleged misrepresentations Petrakopoulou had made concerning her ability to generate revenue, and her ability to transfer her existing client

base.

On December 17, 2008, I granted Petrakopoulou's motion to dismiss DHR's counterclaim and to strike DHR's affirmative defense. *Petrakopoulou v. DHR Int'l., Inc.*, 590 F. Supp. 2d 1013 (N.D. Ill. 2008). DHR subsequently amended its counterclaim and Petrakopoulou again moved to dismiss. This time, I denied the motion. *Petrakopoulou v. DHR Int'l., Inc.*, 626 F. Supp. 2d 866 (N.D. Ill. 2009).[1] Still later, Petrakopoulou amended her complaint, adding claims for fraudulent misrepresentation and unjust enrichment to her original breach-of-contract claim. DHR has moved to dismiss the new claims. For the reasons discussed below, the motion is denied.

**I.**

DHR first argues that Petrakopoulou's fraudulent misrepresentation claim must be dismissed because it does not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). I disagree.

To succeed on a claim for fraudulent misrepresentation under Illinois law, a plaintiff must prove that: (1) the defendant intentionally made a false statement of material fact; (2) the plaintiff had a right to rely on the false statement; (3) the statement was made for the purpose of inducing reliance thereon;

---

[1] Since the case's factual background is explained fully in these earlier opinions, it is unnecessary to rehearse it for the purposes of this motion.

(4) the plaintiff in fact relied on the statement; and (5) the plaintiff suffered injury as a direct result. *See, e.g., Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 n.10 (7th Cir. 2002).

It is well-settled that claims for fraudulent misrepresentation are subject to Rule 9(b)'s heightened pleading standard. *See, e.g., Ivanhoe Financial, Inc. v. Highland Banc Corp.*, No. 03 C 7336, 2004 WL 546934, at *5 n.5 (N.D. Ill. Feb. 26, 2004) ("Rule 9(b) unquestionably applies to the fraudulent misrepresentation claim."); *South Industrial Leasing, LLC v. Ingersoll-Rand Co.*, No. 02 C 4528, 2003 WL 223436, at *9 (N.D. Ill. Jan. 31, 2003) ("A claim for fraudulent misrepresentation . . . must meet the pleading requirements of Rule 9(b)."). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 844 (7th Cir. 2007). As summarized in the Seventh Circuit's oft-repeated formulation, Rule 9(b) requires a party to allege "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The allegations supporting Petrakopoulou's fraudulent misrepresentation claim easily meet Rule 9(b)'s requirements. The

amended complaint alleges that: on May 1, 2006, Geoff Hoffman, DHR's then-Executive Vice President of Strategy, spoke with Petrakopoulou by telephone regarding the company's desire to open an office in Paris (Am. Compl. ¶ 20); on February 26, 2007, David Hoffman, DHR's CEO, flew to London and met with Petrakopoulou to discuss the terms of DHR's latest offer and encourage her to join DHR (Am. Compl. ¶ 30); on April 12, 2007, David Hoffman sent "Petrakopoulou an e-mail in which he promised, among other things, that DHR would pay her a base salary of $250,000, a signing bonus of $50,000, and assist with the legal fees associated with [her] current employer." (Am. Compl. ¶ 32) (quotation marks omitted). The succeeding paragraphs spell out the terms of the employment agreement in still further detail.

In short, the amended complaint identifies who made the alleged fraudulent claims (David Hoffman and Geoff Hoffman); what the fraudulent claims were (that DHR would provide Petrakopoulou with a salary of $250,000; a signing bonus of $50,000; an administrative assistant; three months' notice of termination with compensation; and legal fees of up to £9,000.00); and it alleges when, where, and how the claims were made (by email communications as well as face-to-face meetings during the period from May 2006 to May 2007).

DHR further complains, however, that Petrakopoulou has failed to identify any misrepresentations beyond the statements or terms

-4-

of the parties' employment agreement.  As a result, DHR maintains that Petrakopoulou's fraudulent misrepresentation claim is simply a "repackaging" of her breach-of-contract claim, and is therefore "duplicative and inappropriate."

In response, Petrakopoulou cites to cases in which courts have allowed "promissory fraud" claims of the kind she asserts here -- i.e., claims alleging fraud based on a false representation of intent regarding future conduct -- to be asserted in tandem with breach of contract claims.  *See, e.g.*, *General Elec. Credit Auto Lease, Inc. v. Jankuski*, 532 N.E.2d 361 (Ill. App. Ct. 1988); *Stamatakis Indus., Inc. v. King*, 520 N.E.2d 770 (Ill. App. Ct. 1987).  It is true, as DHR points out, that Illinois generally does not recognize promissory fraud claims.  *See, e.g.*, *General Elec. Credit*, 532 N.E.2d at 364 ("As a general rule, promissory fraud, based on future acts, is not actionable in Illinois."); *see also Bradley Real Estate Trust v. Dolan Associates Ltd.*, 640 N.E.2d 9, 12-13 (Ill. App. Ct. 1994) (explaining that under Illinois law, "a statement of future intention cannot generally be the basis of a claim of fraud because alleged misrepresentations must be statements of present or preexisting facts, and not statements of future intent or conduct").  It is also true, however, that Illinois recognizes an exception to this general rule: such claims are permitted where "the fraud is one element of a pattern of fraudulent acts, and the scheme is intended to induce the promisee

to act for the promisor's benefit at the time of the promise." *Harrison Wells Partners, LLC v. Chieftain Const. Holdings, Ltd.*, No. 09 C 2445, 2009 WL 3010847, at *4 (N.D. Ill. Sept. 16, 2009) (citation and quotation marks omitted).

Courts and commentators alike have remarked upon the difficulty of determining when Illinois' so-called "scheme-to-defraud" exception applies. *See, e.g.*, *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995) ("The distinction between a mere promissory fraud and a scheme of promissory fraud is elusive, and has caused, to say the least, considerable uncertainty, as even the Illinois cases acknowledge."); *Chicago Messenger Service, Inc. v. Nextel Communications, Inc.*, No. 01 C 8820, 2003 WL 22225619, at *7 (N.D. Ill. Sept. 24, 2003) ("Commentators have noted that this "scheme to defraud" exception has not been elucidated, and has resulted in confusion and inconsistent application among Illinois courts.") Nevertheless, the Seventh Circuit has offered the following gloss: "Our best interpretation is that promissory fraud is actionable only if it either is particularly egregious or, what may amount to the same thing, it is embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy." *Desnick*, 44 F.3d at 1354.

Petrakopoulou's fraudulent misrepresentation claim clearly falls within the scheme-to-defraud exception. In unmistakable

-6-

terms, Petrakopoulou's complaint claims that DHR's alleged misrepresentations are part of a larger scheme to lure executive recruiters such as herself away from competing firms by means of sham employment agreements. *See* Resp. Br. at 4; Am. Compl. ¶¶ 1, 55-56. DHR goes on to argue that the scheme alleged by Petrakopoulou is not credible in light of other allegations in her complaint. For example, DHR argues:

> Plaintiff's claim that Petrakopoulou's claims that "DHR had no intention of performing under her Employment Agreement is undermined by her own allegations suggesting that DHR indeed did take steps to abide by its contractual obligations. For example, DHR incorporated a French office and named Ms. Petrakopoulou its director or "gérant." DHR signed a lease for office space in Paris. Furthermore, Plaintiff does not dispute that DHR paid her the agreed upon monthly salary from October 2007 through March 2008. The fact that DHR performed under the Agreement undermines Plaintiff's conclusory allegation that DHR had no intention of honoring her contract at the time it was executed.

DHR Reply Br. at 6 (citations omitted). These contentions, however, plainly raise questions of a factual nature and are not appropriately addressed at the motion-to-dismiss stage. Consequently, I conclude that Petrakopoulou has properly alleged a claim for fraudulent misrepresentation.

## II.

DHR next argues that Petrakopoulou's unjust enrichment claim must be dismissed because she concedes that the parties' relationship was governed by an express contract. Again, I am unpersuaded.

Under Illinois law, "[t]o state a claim for unjust enrichment, the plaintiff must allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience." *Prudential Ins. Co. of America v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008) (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (1992)). "Unjust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Id.* (citing *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (1992)). Because unjust enrichment claims are quasi-contractual in nature, such claims are foreclosed where the parties' relationship is governed by an *express* contract. *See, e.g.*, *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683, 688 (7th Cir. 2004). By the same token, however, where the subject matter of the unjust enrichment claim is distinct from the subject matter of the parties' contract, the unjust enrichment claim is not barred. *Id.*

Here, the subject matter of the parties' employment agreement is distinct from the subject matter of Petrakopoulou's unjust enrichment claim. As Petrakopoulou points out, her unjust enrichment claim is premised on events that occurred *after* the employment contract was breached. In particular, she claims that DHR was unjustly enriched by the work she continued to perform, and

expenses she continued to incur, after her employment was terminated. Thus, the existence of the parties' employment agreement does not prevent Petrakopoulou from asserting a claim for unjust enrichment.

DHR argues that in restricting the scope of her unjust enrichment claim to events following her termination, Petrakopoulou is seeking to depart from her characterization of the claim in her amended complaint. This is simply incorrect. The amended complaint's allegations vis a vis the unjust enrichment claim clearly center on post-termination events. Thus, for example, Petrakopoulou alleges that "[e]ven after DHR purported to terminate her employment, Ms. Petrakopoulou had continuing responsibilities under French law as gérant [manager] of DHR France," that she asked that she be replaced, and that she "continued to perform her gérant duties until the dissolution of the entity on May 25, 2009." Am. Compl. ¶ 59. Moreover, Petrakopoulou goes on to claim:

> 67. DHR did not pay Ms. Petrakopoulou for her time spent as gérant of DHR France after April 1, 2008.
>
> 68. DHR did not reimburse Ms. Petrakopoulou for any of the expenses she incurred as gérant of DHR France, including the rent on the Paris virtual office space from June 2008 through August 2008 inclusive.

Am. Compl. ¶¶ 67-68.

In short, the subject matter of Petrakopoulou's unjust enrichment claim is distinct from the subject matter of her employment agreement with DHR. DHR is therefore mistaken in

contending that the existence of the parties' contract forecloses Petrakopoulou's unjust enrichment claim. DHR's motion to dismiss the claim is denied.

### III.

For the foregoing reasons, DHR's motion to dismiss is denied.

                **ENTER ORDER:**

                _____
                **Elaine E. Bucklo**
                United States District Judge

Dated: October 8, 2009